UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MARY ANN BLANCO, et al.,         )<br>                                                      )<br>                    Plaintiffs,          )<br>        vs.                                         )<br>                                                      )<br>TRUMP RUFFIN TOWER I, LLC,  )<br>                                                      )<br>                    Defendant.        )<br>                                                      ) | Case No.: 2:11-cv-00153-GMN-PAL<br><br>**ORDER** |

Pending before the Court is Plaintiffs' Motion to Vacate Arbitration Award (ECF No. 1). Defendant filed a Response (ECF No. 10), to which Plaintiffs submitted a Reply (ECF No. 21). Defendant also filed a Notice of Supplemental Authority (ECF No. 25), to which Plaintiffs responded (ECF No. 26). In light of these filings and the hearing held on July 1, 2011 (*see* ECF No. 27), the Court will DENY Plaintiffs' Motion (ECF No. 1).

**I.     BACKGROUND**

Plaintiffs purchased condominiums in Trump Tower prior to the implosion of the so-called "housing bubble." After that bubble burst, they initiated the underlying arbitration in an attempt to invalidate their purchase agreements and recoup the money they had paid toward the condominiums.

At the arbitration proceedings, Plaintiffs alleged that Defendant violated the Interstate Land Sales Full Disclosure Act ("ILSA") by failing to include certain statutorily-required language in its purchase agreements with Plaintiffs. Specifically, Plaintiffs brought their claim under 15 U.S.C. § 1703(d)(2), which provides, in relevant part, that:

> Any contract or agreement which is for the sale or lease of a lot not exempt under section 1702 of this title and which does not provide . . . that, in the event of a default or breach of the contract or agreement by the purchaser or lessee, the seller or lessor (or successor thereof) will

> provide the purchaser or lessee with written notice of such default or breach and of the opportunity, which shall be given such purchaser or lessee, to remedy such default or breach within twenty days after the date of the receipt of such notice . . . may be revoked at the option of the purchaser or lessee for two years from the date of the signing of such contract or agreement.

Contending that their purchase agreements did not contain the exact notice required by this section, Plaintiffs sought to revoke those agreements.

The Arbitrator ultimately concluded that, "[a]bsent application of the savings clause, the Agreements did not comply with § 1703(d)(2) because [Plaintiffs'] rights to written notice of and the opportunity to cure monetary defaults was limited by the language of the Agreements." (Ex. 2, p. 11:21-23, Mot., ECF No. 1.) However, the Arbitrator determined that Plaintiffs did not have a right to revoke their purchase agreements because a "savings clause" in the agreements served to cure any statutory defects and, in the alternative, because Defendant substantially complied with section 1703(d)(2). Plaintiffs now ask that the Arbitrator's ruling be vacated, arguing that the Arbitrator exceeded his powers in arriving at this determination.

## II.   STANDARD OF REVIEW

The burden of establishing grounds for vacating an arbitration award is on the party seeking vacatur. *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co*, 591 F.3d 1167, 1173 (9th Cir. 2010). Review of the award is "both limited and highly deferential." *Poweragent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1193 (9th Cir. 2004*).* Indeed, federal courts may only vacate arbitration awards in very limited circumstances. Section 10 of the Federal Arbitration Act permits vacatur only:

> (1)  where the award was procured by **corruption, fraud, or undue means;**
>
> (2)  where there was evident **partiality or corruption** in the arbitrators, or either of them;

     (3)  where the arbitrators were guilty of misconduct in **refusing to postpone** the hearing, upon sufficient cause shown, or in **refusing to hear evidence** pertinent and material to the controversy; or of any other **misbehavior** by which the rights of any party have been prejudiced; or

     (4)  where the arbitrators **exceeded their powers,** or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Kyocera v. Prudential-Bache Trade Services, Inc.*, 341 F.3d 987, 997 (9th Cir. 2003) (quoting and adding emphasis to 9 U.S.C. § 10(a)).

     Plaintiffs contend that the underlying arbitration award should be vacated because "the Arbitrator exceeded the scope of his authority by rendering an Award that manifestly disregarded applicable laws and was irrational." (Mot. 2:6-8, ECF No. 1.)  Plaintiffs thus appear to be invoking section 10(a)(4) of the Federal Arbitration Act.

     The Ninth Circuit has held "that arbitrators 'exceed their powers' in this regard not when they merely interpret or apply the governing law incorrectly, but when the award is 'completely irrational' or exhibits a 'manifest disregard of the law.'" *Kyocera*, 341 F.3d at 997.  Absent such complete irrationality or manifest disregard of the law, "[n]either erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the [Federal Arbitration Act], which is unambiguous in that regard." *Id.* at 994.

     The "completely irrational" standard is generally applied in the context of an arbitrator's interpretation of a contract.  "This standard is extremely narrow and is satisfied only where the arbitration decision fails to draw its essence from the agreement." *Bosack v. Soward*, 586 F.3d 1096, 1106 (9th Cir. 2009) (internal quotation marks omitted).  "An award draws its essence from the agreement if the award is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions." *Id.* (internal quotation marks omitted).  A court does not "decide the rightness or wrongness of the

arbitrators' contract interpretation, only whether the panel's decision draws its essence from the contract." *Id.* Nor will a court vacate an award simply because the court may have interpreted the contract differently. *Id.* Further, the question addressed under the "completely irrational" standard is "whether the award is 'irrational' with respect to a contract, not whether the [arbitrator's] findings of fact are correct and internally consistent." *Id.*

"'Manifest disregard of the law' means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law." *Michigan Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995). "It must be clear from the record that the arbitrators recognized the applicable law and then ignored it." *Id.* Indeed, "to demonstrate manifest disregard, the moving party must show that the arbitrator understood and correctly stated the law, but proceeded to disregard the same." *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007) (internal quotation marks omitted). This notion is sometimes stated as "[t]here must be some evidence in the record, other than the result, that the arbitrators were aware of the law and intentionally disregarded it." *Bosack*, 586 F.3d at 1104 (quoting *Lincoln Nat'l Life Ins. Co. v. Payne*, 374 F.3d 672, 675 (8th Cir. 2004)).[1]

Further, in order for an arbitrator to manifestly disregard the law, "the governing law alleged to have been ignored by the arbitrators must be *well defined, explicit, and clearly applicable*." *D.R. Horton*, 505 F.3d at 884 (finding there to be no manifest error where there was no binding precedent on point); *see also T-Mobile USA, Inc. v. Qwest Communications Corp.*, No. C07-0976MJP, 2007 WL 3171428, at *5 (W.D. Wash. Oct. 26, 2007) ("Because no binding precedent exists as to causes of action under [the relevant statutes] the arbitrator could not have manifestly disregarded the law when he based his award on violations of those sections.").

---

[1] Although this statement of the rule may seem to be less stringent than the standard articulated in *D.R. Horton*, the Eighth Circuit case quoted by *Bosack* contains an example of the sort of evidence necessary for a finding that the arbitrator manifestly disregarded to the law and that example is nearly identical to the showing required by *D.R. Horton*. The Eighth Circuit explained, "If an arbitrator, for example, stated the law, acknowledged that he was rendering a decision contrary to law, and said that he was doing so because he thought the law unfair, that would be an instance of 'manifest disregard.'" *Payne*, 374 F.3d at 675.

## III. DISCUSSION

Plaintiffs argue that the Arbitrator exceeded his powers in three ways: (1) by applying the savings clause contained in the purchase agreements to cure the agreements' noncompliance with section 1703(d)(2)'s disclosure requirement; (2) by concluding that section 1703(d)(2) requires a showing of specific harm; and (3) by determining that rescission was not appropriate because Defendant substantially complied with section 1703(d). Further, although Plaintiffs only address the argument in the "Background" section of their Motion and did not discuss it in any detail at the hearing, Plaintiffs appear to contend that the Arbitrator erred by revisiting his April 2010 Order, (Ex. 20, Mot., ECF No. 1), when he issued the November 2010 Final Order, (Ex. 2, Mot., ECF No. 1). (*See* Mot. 9:13-10:13, ECF No. 1.)

### A. It was not an error for the Arbitrator to revisit his April Order

Rule 46 of the American Arbitration Association provides that "the arbitrator is not empowered to redetermine the merits of any claim already decided." *Bosack*, 586 F.3d at 1103. "This rule essentially codifies the common law doctrine of *functus officio*, which forbids an arbitrator to redetermine an issue that he has already decided." *Id.* (internal quotation marks omitted). The threshold issue when determining whether the arbitrator violated these doctrines is whether the issue has already been "decided." In order to have been "decided," the arbitrator's award must be final. An award is final for the purposes of these doctrines "if the award states it is final, and if the arbitrator intended the award to be final." *Id.* The April rulings that Plaintiffs claim the Arbitrator erroneously revisited were not final; therefore, the Arbitrator did not violate Rule 46 or the *functus officio* doctrine.

The Arbitrator made his first ruling in this case in July of 2009. In that ruling, he denied without prejudice Plaintiffs' request to enforce a right of revocation under ILSA, finding that: (a) Defendant substantially complied with ILSA; (b) ILSA is not a strict liability statute; (c) the "savings clause" contained in the purchase agreements effectively cured any statutory defects;

and (d) the underlying purchase agreements were not illusory. (*See* Ex. H, Resp., ECF No. 14.) The Order did, however, explain that: "[t]he parties may reassert their requests for summary disposition of specific issues at a more appropriate time, after sufficient discovery, and upon a proper evidentiary showing for the relief requested." (*See id.* at ¶ 13). As a result of that order, Plaintiffs conducted extensive discovery.

At the close of discovery, the parties entered into a stipulation for the Arbitrator to again consider whether the purchase agreements "actually or substantially complied" with Section 1703(d)(2); however, the Arbitrator would not again be tasked with considering the "savings clause" in assessing the purchase agreements' actual or substantial compliance. If Defendant prevailed, Plaintiffs' section 1703(d)(2) claims would be dismissed with prejudice; if Plaintiffs prevailed, then a second evidentiary hearing would be held to determine whether the facts supported the application of the "saving clause." Specifically, the stipulation provides: "If the Arbitrator decided the Threshold Issue in [Plaintiffs'] favor as to some or all of the Agreements, that ruling shall be final as to such Agreements, subject to a hearing as more particularly set forth in Paragraph 3 above." (Ex. 19 at ¶ 5, Mot., ECF No. 1.)[2] Paragraph 3 provides for a hearing to address whether the "savings clause" renders the Agreements in compliance with Section 1703(d)(2) and, if not, what the ramifications of that are.

Pursuant to the parties' stipulation, the Arbitrator entertained briefing, held a hearing, and then ultimately released his April 2010 Order (Ex. 20, Mot. ECF No. 1). In that Order, the Arbitrator granted Plaintiffs' motion for enforcement of their right of rescission and denied Defendant's cross-motion for summary disposition of those claims in Defendant's favor. (*Id.* at ¶ 1.) In doing so, the Arbitrator found that:

> It is undisputable that Respondent did not <u>fully</u> comply with the statute. It is less clear as to whether [Defendant], by its actions, <u>substantially</u> complied with the statute. Indeed, the parties submitted

---

[2] Plaintiffs misleadingly omit the clause beginning with "subject" in their Motion to Vacate. (*See* Mot. 8:17-18, ECF No. 1.)

>  extensive briefing on the issue of whether a demonstration of substantial compliance is sufficient to comply with the statute. Each furnished legal authority to support its position; however, the authorities posited fall short of resolving the issue, in the mind of this arbitrator, as to whether substantial compliance is in fact an appropriate legal standard in determining compliance for § 1703(d)(2) "right of revocation" purposes. Moreover, the arbitrator finds there to be a significant factual issue as to whether substantial compliance would be, in any event, belied by respondent's conduct in permitting the exceptions language to remain in the purchase agreement after learning of its mistaken noncompliance with the statute.

(Ex. 20 at ¶ 4, ECF No. 1.) However, the Arbitrator expressly did not make a final determination as to whether Defendant had substantially complied with the final determination and reserved that determination until a later date, writing:

> In sum, [Plaintiffs] may proceed with their presentation of a two-year right of rescission under the statute, it being demonstrated to the satisfaction of the arbitrator that Defendant did not fully comply with said statute and it being inconclusive as to whether substantial compliance is a legally sufficient standard, given the plain meaning of the statute. Nonetheless, Defendant will be afforded amply opportunity in a subsequent proceeding to present its savings clause and equitable-tolling defense in attempting to defeat [Plaintiffs'] rescission claims arising under 15 USC § 1703(d)(2). **In this vein, the arbitrator reserves discretion, pursuant to rule R-31(a) of the commercial Rules, to further consider [Defendant'] substantial compliance defense at such time that he receives evidence and argument on the savings clause and equitable-tolling defenses**. So ruled.

(Ex. 20 at ¶ 7, ECF No. 1) (emphasis added). Thus, the April Order neither states that it is a final determination of whether Defendant substantially complied with the statute (or if a substantial compliance defense is even available), nor does it indicate that the Arbitrator intended it to be final in that regard. Accordingly, the Arbitrator's November decision regarding Defendant's substantial compliance does not violate either Rule 46 or the doctrine of *functus officio*. The only aspect of the arbitrator's April Order that was arguably final was the arbitrator's finding that

Defendant did not fully comply with the letter of section 1703(d)(2), and that finding remained unaltered in the November opinion--the arbitrator still found that Defendant failed to comply with the exact mandates of that section.

### B. The Arbitrator did not exceed his powers in determining that the savings clause cured the statutory defects

As one of two grounds for finding that Plaintiffs do not have the right to rescind their purchase agreements, the Arbitrator determined in his November Final Order that the "savings clause" contained in the purchase agreements cures the ILSA defects. Plaintiffs contest this determination.

#### i. Applying the savings clause was not completely irrational

The aspect of the purchase agreements that the Arbitrator found to violate ILSA is the language contained in the first clause of the following sentence: "[W]*ith the exception of Buyer's failure to timely pay a deposit or close on the Closing Date*, Seller shall give Buyer written notice of Buyer's default or breach of this agreement and give Buyer the opportunity to correct the default or breach within twenty (20) days from receipt of such notice." (Ex. 10 at ¶ 18.1, ECF No. 1) (emphasizing the relevant language). However, the Arbitrator found that this clause could be stricken--and, therefore, proper ILSA notice could be given--pursuant to the "savings clause" also contained in the purchase agreements, which provides:

> Without limiting the generality of the foregoing, if the mere inclusion in this Agreement of language granting to Seller certain rights, remedies and powers, or waiving or limiting any of Buyer's rights, remedies or powers or Seller's obligations, results in a final determination (after giving effect to the above judicial modification, if possible) that Buyer has the right to cancel this Agreement and receive a refund of Buyer's deposit, such offending rights, powers, limitations and/or waivers shall be struck, cancelled and rendered unenforceable, ineffective and null and void. Under no circumstances shall either Buyer or Seller have the right to cancel this Agreement solely by reason of the inclusion of certain language in this Agreement.

(Ex. 10 ¶ 25.6, ECF No. 1.)

In light of this language, this Court concludes that the Arbitrator's decision to strike the offending clause drew "its essence from the agreement" and at least "arguably construed or applied the contract," *U.S. Life Ins. Co.,* 591 F.3d at 1177. In other words, the Arbitrator's decision was not "completely irrational." The "savings clause" permitted the Arbitrator to strike language that would otherwise allow the buyer to rescind the agreement, and the Arbitrator did so with regard to the language that was italicized above. This created the sentence: "Seller shall give Buyer written notice of Buyer's default or breach of this agreement and give Buyer the opportunity to correct the default or breach within twenty (20) days from receipt of such notice," which, at the hearing, even Plaintiffs agreed with section 1703(d)(2).

Nevertheless, Plaintiffs contend that it was irrational for the Arbitrator to apply this savings clause to the offending language, but their arguments amount to little more than disagreement over the manner in which the Arbitrator interpreted the agreement and disagreement over the manner in which one must comply with section 1703(d)(2). For example, at the hearing, Plaintiffs' counsel argued that the "savings clause" did not pertain to paragraph 18.1 because the "savings clause" can only work to strike limitations of a buyer's rights. However, the "savings clause" also allows for the striking of limitations on a seller's obligations, and it would not be irrational for an arbitrator to deem that the italicized language above limits the seller's contractual obligations. Plaintiffs might not agree with that interpretation of the contractual language, but mere disagreement with an arbitrator's contractual analysis is not sufficient to warrant vacatur.

Further, to the extent that Plaintiffs contend that the Arbitrator's actions did not draw their essence from the agreement because there had been no final determination with regard to whether they had the right to rescind the agreement, Plaintiffs should revisit their own arguments concerning the finality of the April 2010 Order. Unlike his determinations regarding whether Defendant substantially complied with the statute and whether the savings clause could be

applied, the Arbitrator did not reserve the right to revisit his finding that "Respondent did not fully comply with the requirements of said statute by its insertion of 'exceptions' into the contract language designed to accord Claimants with the protections required by statute," (Ex. 20 at ¶ 2, ECF No. 1), and, indeed, ruled that Plaintiffs could "proceed with their presentation of a two-year right of rescission under the statute," (Ex. 20 at ¶ 7, ECF No. 1), absent the applicability of the savings clause or the doctrine of substantial compliance.  Thus, the Arbitrator at least arguably made a final determination that Defendant had failed to comply with the statute.  Under the deferential standard that the Court is required to apply, this is enough to establish that the Arbitrator complied with the essence of the purchase agreements.

Plaintiffs also argue that, based on their own interpretation of exactly when and how ISLA must be complied with and the interpretations set forth in a few non-binding decisions addressing the issue, it was irrational for the Arbitrator to apply the savings clause to cure the ILSA violation after the parties had already entered into the purchase agreements. (*See* Mot. 21:13-22:5, ECF No. 1.)  However, absent well-defined, binding law instructing the Arbitrator precisely how and when ILSA must be complied with, the Court cannot say that the Arbitrator manifestly disregarded the law or applied the "savings clause" irrationally.  Plaintiffs have failed to provide the Court with such clear, binding law.

        ii.      <u>Plaintiffs did not meet their burden of showing that<br>the Arbitrator manifestly disregarded binding law</u>

The next question to be addressed is whether the Arbitrator "manifestly disregarded" Nevada law when it applied the savings clause. *See Stein v. Paradigm Mirasol, LLC*, 586 F.3d 849, 854 (11th Cir. 2009) (explaining that the interpretation of ILSA is a matter of federal law, while the interpretation of the contracts for the purchase of the property is left to state law); *see also* Paragraph 21 of the Purchase Agreements (Ex. 10 ¶ 21, ECF No. 1) ("The Agreement shall be governed by and construed in accordance with the laws of the State of Nevada.").  However,

nowhere in the body of their Motion or their Reply do Plaintiffs cite to a Nevada case or statute that they claim should have precluded the Arbitrator from applying the "savings clause" in this context. Nor do they identify any Ninth Circuit or Supreme Court case that they allege the Arbitrator manifestly disregarded by applying that clause.[3] Thus, they fail to meet their burden and their argument fails.

Defendant alerted Plaintiffs to this deficiency in its Response to their Motion, writing "Plaintiffs' failure to identify the controlling law manifestly disregarded by the Arbitrator in entering the foregoing findings [pertaining to the savings clause] is fatal to this Motion." (Resp. 19:4-6, ECF No. 10.) Plaintiffs responded to this allegation by asserting that Defendant's contention was "false" but then proceeded to cite only non-binding authority that was not controlling with respect to the Arbitrator's decision. (*See* Reply 16:18-19 n.7, ECF No. 21.)

In order to show that a clear, binding law was manifestly disregarded, Plaintiffs must first show that clear, binding law existed to be disregarded. Yet, Plaintiffs fail to identify in their Motion or their Reply binding precedent that would have precluded the Arbitrator from applying the savings clause to cure an ILSA violation. Nor did Plaintiffs direct the Court toward such precedent at the hearing. Although Plaintiffs did argue at the hearing that 15 U.S.C. § 1712 should have prevented the Arbitrator from ruling as he did, Plaintiffs did not bear their burden of showing that the Arbitrator was aware of this law. When asked whether the Arbitrator knew of this statute, Plaintiffs' counsel said that he did and, without specifying a page or line number, directed the Court to look to Plaintiffs' 109-page Findings of Fact and Conclusions of Law (ECF No. 31) to find evidence of that. Aside from the fact that such a flippant, generalized reference to a lengthy document is insufficient to sustain Plaintiffs' burden[4], their Findings of Fact and

---

[3] The only Ninth Circuit cases Plaintiffs cite with regard to the application of the savings clause pertain to the "completely irrational" standard. (*See* Mot. 21:4-7 & 22:13-21, ECF No. 1; Reply 17:2-7 & 20:11, ECF No. 21.) Nowhere in the body of the Motion or the Reply do Plaintiffs cite to a Ninth Circuit case that the Arbitrator is alleged to have manifestly disregarded.
[4] "[J]udges are not like pigs, hunting for truffles buried in briefs." *Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994).

1  Conclusions of Law contain no reference to section 1712.[5]  Thus, they fail to meet their burden
2  of demonstrating that the Arbitrator manifestly disregarded a clear, binding law.

### C. The Arbitrator did not manufacture a specific injury requirement

Plaintiffs claim that the Arbitrator exceeded his powers by "manufactur[ing] a requirement that Plaintiffs demonstrate some specific injury stemming from Trump's failure to comply with the statute." (Mot. 13:3-4, ECF No. 1.)  The flaw with this argument is that the Arbitrator imposed no such requirement on Plaintiffs.

The section of the Arbitrator's November 2010 Order in which the Arbitrator placed significance on the fact that Plaintiffs had suffered no injury was the aspect of the analysis in which the Arbitrator was assessing whether the Defendant has substantially complied with the section 1703(d)(2).  The Arbitrator did not make "specific injury" an element of a claim under section 1703(d)(2) as Plaintiffs argue that he did; rather, the arbitrator viewed the absence of injury to be a useful criterion to weigh in determining whether the defense of substantial compliance was available to Defendant.  This makes sense: although it does not necessarily follow from a lack of injury that Defendant substantially complied with the statute, it does make it appear likelier that Defendant substantially complied with the statute.

The aspect of the Arbitrator's analysis that discusses whether Plaintiffs suffered actual injury reads:

> In the 2009 Ruling, the Arbitrator found that "Respondent substantially complied with ILSA" and that "ILSA is not a strict liability statute."  With regard to these legal findings, nothing has

---

[5] Further, even if their Findings of Fact did contain such a citation to section 1712, Plaintiffs have failed to provide the Court with any authority indicating that the inclusion of one citation among many others in a 109-page document that was presented to the Arbitrator is sufficient to establish that the Arbitrator "understood and correctly stated the law" such that he could manifestly disregard it. "[T]he term 'disregard' implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it." *Marshall v. Green Giant Co.*, 942 F.2d 539, 550 (8th Cir.1991).  The Court cannot say that, even if section 1712 had been included in Plaintiffs' lengthy brief, its mere inclusion in that brief would have been sufficient to support a showing that the Arbitrator actually appreciated the existence of the legal principle contained in that statute.

>changed since the 2009 Ruling and [Plaintiffs] have not provided any authority (decided prior to or since the 2009 Ruling) to justify a reconsideration of this finding.  In fact, interim authority confirms that ILSA is not a strict liability statute and is subject to equitable defenses.  [citation] 2009 WL 3367335, at *3 ("Accordingly, because Plaintiff has failed to provide binding authority or persuasively demonstrate that the ILSA is a strict liability statute barring all equitable or common law defenses, the undersigned is unable to find that the Equitable Defenses are insufficient as a matter of law.")  [Plaintiffs] failed to present evidence that [Defendant] engaged in bad faith or [have] "unclean hands."  **Moreover, [Plaintiffs] have conceded that they were not damaged in anyway by the limitations in the Agreements on their § 1703(d)(2) notice and cure rights.**  Absent such authority and evidence, and in view of [Defendant's] actions that more than complied with ILSA, the Arbitrator finds that [Defendant] substantially complied with § 1703(d)(2) and that such compliance defeats any claim that [Plaintiffs] are entitled to revoke the Agreements.

(Ex. 2, p. 19:9-23, Mot., ECF No. 1.)  The Arbitrator is not indicating here that "specific injury" is a particular element that *must* be fulfilled in order to entitle a claimant to revoke under section 1703(d)(2).  Rather, the Arbitrator is simply weighing the lack of harm in the course of his substantial compliance analysis.  The Court cannot say that the Arbitrator "manifestly disregarded" clear law in doing so.

Because Plaintiffs contend that the Arbitrator made specific injury an element of a section 1703(d)(2) claim when, in fact, the Arbitrator simply analyzed the absence of injury in determining whether the equitable defense of substantial compliance applied, Plaintiffs' request for a finding of error in this regard fails.  This argument simply blends together with whether substantial compliance is a valid defense in the context of section 1703(d)(2) violations.

>**D.   The Arbitrator did not manifestly disregard the law by finding that Plaintiffs had no right to rescind due to Defendant's substantial compliance with the statute**

Plaintiffs also contend that the Arbitrator manifestly disregarded the law by finding that Defendant's substantial compliance with section 1703(d)(2) foreclosed Plaintiffs' right to

rescind. The questions before the Court are, therefore: (a) whether "well-defined, explicit, and clearly applicable" law forbids a substantial compliance defense in such contexts, and (b) whether Plaintiffs have shown that the arbitrator knew that law and ignored it nonetheless.

It is undisputed that section 1703(d)(2) allows for the rescission of a purchase agreement that does not include language indicating that, in the event of a breach of the contract by the purchaser, the seller shall give the purchaser written notice of that breach and twenty (20) days from the date of the notice in which to remedy that breach. It is also undisputed that, absent the application of the "savings clause," the purchase agreements did not fully comply with section 1703(d)(2). The parties differ, however, over whether substantial compliance with the statute can make up for violating its exact terms.

    i. <u>There is no binding Ninth Circuit or Supreme Court precedent addressing the issue</u>

Notably, there is no Ninth Circuit or Supreme Court precedent interpreting whether substantial compliance can cure a violation of section 1703(d)(2) or whether equitable defenses generally apply in the context of alleged section 1703(d)(2) violations. This is enough to warrant a finding that an arbitrator did not manifestly disregard the law because it cuts against there being "well defined, explicit, and clearly applicable" law for the Arbitrator to violate. In *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 876 (9th Cir. 2009), the Circuit affirmed the district court's denial of a motion to vacate an arbitration award because "no well defined, explicit, and clearly applicable law existed to be disregarded." The question before the Circuit was whether the arbitrator manifestly disregarded the law by deciding not to apply offensive non-mutual collateral estoppel. Determining that "no binding precedent existed" as to "whether (1) arbitrators are required to afford federal judgments preclusive effect, (2) arbitrators possess the same broad discretion as district courts in determining whether to apply offensive non-mutual collateral estoppels, and (3) the qualitative difference between a district court judgment and an arbitration

award renders unfair the application of offensive non-mutual collateral estoppel in arbitration on the basis of a prior judgment pending appeal," the Circuit affirmed the trial court, even though the Circuit expressly acknowledged that other Circuits had already addressed the first question. *Id.* at 880 & 884.  The Circuit's focus on "binding precedent" is telling and forecloses the possibility that the Arbitrator manifestly disregarded the law by finding contrarily to the non-binding decisions of the Fifth Circuit, the Eastern District of Pennsylvania, and the Eastern District of North Carolina, among others, cited by Plaintiffs. *See T-Mobile USA, Inc. v. Qwest Communications Corp.*, No. C07-0976MJP, 2007 WL 3171428, at *5 (W.D. Wash. Oct. 26, 2007) ("Because no binding precedent exists as to causes of action under [the relevant statutes] the arbitrator could not have manifestly disregarded the law when he based his award on violations of those sections.").

Further, even if non-binding cases were relevant to whether the Arbitrator abused his power in finding that the statute was subject to equitable defenses such as substantial compliance, it is not as though every federal court confronted with the issue has ruled that equitable defenses do not apply to ILSA.  For example, in *Meitis v. Park Square Enterprises, Inc.*, No. 6:08-cv-1080-Orl-22GLK, 2009 WL 3367335, at *4 (M.D. Fla. Oct. 15, 2009)--which the Arbitrator cites in his November Order, (*see* Ex. 2, p. 19:14-18, Mot., ECF No. 1.)--the district court explained that:

> Plaintiff's argument that because ILSA is a strict liability statute, all equitable or common law defenses are barred is not persuasive. . . . Accordingly, because Plaintiff has failed to provide binding authority or persuasively demonstrate that the ILSA is a strict liability statute barring all equitable or common law defenses, the undersigned is unable to find that the Equitable Defenses are insufficient as a matter of law.[6]

---

[6]Plaintiffs attempt to distinguish *Meitis* by arguing that the district court was not making a general legal pronouncement when it ruled that "Plaintiff's argument that because ILSA is a strict liability statute, all equitable or common law defenses are barred is not persuasive," but, rather, was indicating that the plaintiff had simply failed to meet its burden of establishing that those defenses were barred. (Reply 11:20-12:3, ECF No. 21.)  However, *Meitis* is open to either interpretation, and, therefore, the Court cannot hold that the Arbitrator "manifestly disregarded" the law by relying on that case.

Thus, the law concerning this aspect of section 1703(d)(2) is not "well defined, explicit, and clearly applicable" in two respects: (1) there is no binding precedent explaining whether or not it is subject to equitable defenses, and, (2) there is also no unanimity among courts that have addressed this question. Nor does the Court find that the Arbitrator "manifestly disregarded" the law when he attempted to distinguish the non-binding authorities Plaintiffs presented.

    ii. <u>It is not clear from the face of the statute that equitable defenses do not apply</u>

At the hearing, Plaintiffs not only argued that the Arbitrator manifestly disregarded the case law concerning section 1703(d)(2), they also contended that the Arbitrator manifestly disregarded the statute itself. Plaintiffs asserted that the plain language of the statute forecloses equitable defenses such as substantial compliance. Because the statute requires particular disclosures and articulates a remedy if those disclosures are not made without setting forth any exceptions, Plaintiffs contended that the statute is not subject to a "substantial compliance" defense. That is, because the statute does not explicitly carve out an exception for substantial compliance, Plaintiffs argued that it is clearly apparent that substantial compliance cannot remedy a violation of the express terms of the statute.

The Arbitrator anticipates this sort of argument in his Final Order, quoting *Gilmore v. People of the State of California*, 220 F.3d 987, 997 n.12 (9th Cir. 2000) and citing to *Porter v. Warner*, 328 U.S. 395, 398 (1946) for the proposition that "a statute should not be construed to displace courts' traditional equitable powers absent the clearest command to the contrary," and pointing out that section 1703(d)(2) does not explicitly prohibit the application of equitable defenses. (*See* Ex. 2 at p. 19:2-6, Mot., ECF No. 1.) Based on those cases and the lack of explicit language prohibiting a substantial compliance defense, the Arbitrator's decision appears well-reasoned and not in manifest disregard of the law. Nevertheless, Plaintiffs' contest this aspect of the Final Order.

Plaintiffs do not, however, even attempt to distinguish the cases on which the Arbitrator relied.  Instead, they argue that section 1703(d)(2) is obviously a strict liability statute and that "it is well-established that equitable defenses like substantial compliance cannot be raised to excuse noncompliance with a strict liability statute unless the statute specifically provides for such defenses." (Reply 10:2-8, ECF No. 21.)  However, yet again, Plaintiffs fail to explicitly identify in their Motion or their Reply the binding case law, rule, or statute that the Arbitrator allegedly manifestly disregarded by failing to embrace their conception of the law. Instead, they merely cite non-binding cases in support of their proposition. (*See* Mot. 27:23-27, ECF No. 1; Reply 10:4-8, ECF No. 21.)  As the Court has noted before, this is insufficient to meet their burden of showing that the Arbitrator manifestly disregarded well-defined, binding law.  Plaintiffs' burden is particularly unfulfilled here in light of the fact that the Arbitrator supported his decision with *Gilmore* and *Warner* and Plaintiffs failed to rebut or otherwise address those cases.

Furthermore, federal courts have not unanimously determined that it is clear from the face of section 1703(d)(2) that equitable defenses do not apply.  Indeed, regardless of which interpretation of *Meitis* one embraces, the case stands for the proposition that it is not clear from the face of section 1703(d)(2) that it is a strict liability statute to which equitable defenses do not apply.  If one adopts Plaintiffs' interpretation of *Meitis*, then the district court held "only that it could not find that ILSA was a strict liability statute prohibiting equitable defenses because the plaintiff in that case had failed to present sufficient authority to support his position." (Reply 12:2-3, ECF No. 21.)  However, if the statute is as clear on the issue as Plaintiffs contended at the hearing, then why did the district court require authority from the plaintiff to support his position?  If the statute is as clear as Plaintiffs contend it is, the statute's text alone should have been sufficient to cause the court to conclude that equitable defenses are unavailable.

Mindful that law cannot be manifestly disregarded unless it is "well defined, *explicit*, and clearly applicable," *D.R. Horton*, 505 F.3d at 884 (emphasis added), it is also important to

reemphasize that the statute does not explicitly state that equitable defenses, generally, or substantial compliance, specifically, do not apply. As the Arbitrator correctly explains in his November 2010 Order, "[t]he plain language of ILSA does not expressly proscribe the applicability of equitable powers with respect to its enforcement and interpretation." (Ex 2 at p. 19:5-6, ECF No. 1.)[7]

Plaintiffs merely reach their own conclusion that a substantial compliance defense does not exist by arguing that the statute *implies* that equitable defenses do not apply because it sets forth very specific grounds for compliance with the statute and does not list any exceptions. They do not point to any aspect of the statute that *explicitly* forecloses such defenses. This lack of explicit language in the statute, combined with the Arbitrator's reliance on authority from the Ninth Circuit stating that "a statute should not be construed to displace a courts' traditional equitable powers absent the clearest command to the contrary," *Gilmore*, 220 F.3d at 997 n.12 (9th Cir. 2000) preclude a finding of manifest disregard for the law. Although Plaintiffs or the Court may have interpreted the statute differently, it cannot be said that the Plaintiff "manifestly disregarded" the statute.

        iii.      The Arbitrator did not manifestly disregard the law by finding that Defendant substantially complied with ILSA

Not only did the Arbitrator find that a buyer's right to revoke could be defeated by substantial compliance with section 1703(d)(2), he found that Defendant, in fact, substantially complied with that section. In reaching this conclusion, the Arbitrator noted that:

> (a) [Defendant] filed a statement of record with HUD; (b) HUD accepted the statement of record with an effective date of June 16, 2005; (c) the Agreements and the Property Report disclosed Claimants' rights, under § 1703(d)(3), to a refund of that portion of

---

[7] This quotation also serves to dispel Plaintiffs' argument that the arbitrator ignored the language of the relevant statute throughout his Final Order. (*See* Mot. 13:25-14:7, ECF No. 1.) He may not have directly quoted the statute, but he certainly looked to it and referenced it.

> their deposits remaining after subtracting the greater of 15% of the purchase price or the amount of [Defendant's] actual damages; (d) that the Property Report disclosed [Plaintiff'] rights, under § 703(d)(2), to written notice of any default of the Agreements and 20 days from the receipt of such notice to cure the default prior to termination of the Agreements as a result of the default; and (e) all [Plaintiffs] were given actual <u>written</u> <u>notice</u> of all defaults and <u>at least</u> 20 days to cure such defaults prior to the termination of the Agreements. Sometimes [Defendant] gave many more than the 20 required by ILSA for the Claimants to cure their defaults.

(Ex. 2, p. 18:16-25, Mot., ECF No. 1.)  Plaintiffs contest this aspect of the Final Order as well.

Citing to *Sawyer v. County of Sonoma*, 719 F.2d 1001, 1008 (9th Cir. 1983) for the proposition that "a party knowledgeable of its noncompliance with a statute cannot substantially comply," Plaintiffs contend that the Arbitrator manifestly disregarded the law by determining that Defendant could have substantially complied with the statute. (Mot. 29:24-26, ECF No. 1.) However, the Arbitrator explicitly found as a factual matter that "neither [Defendant] nor its law firm believed that there was a violation of § 1703(d)(2)," (Ex. 2, p. 12:14-15, Mot., ECF No 1), meaning that Defendant was not knowledgeable of its noncompliance.  Therefore, *Sawyer* is inapplicable.  Nor can the Court revisit the factual findings of the Arbitrator to make *Sawyer* applicable: "[n]either erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the [Federal Arbitration Act], which is unambiguous in that regard." *Kyocera*, 341 F.3d at 994.

Plaintiffs' remaining arguments merely demonstrate a fundamental disagreement between the Arbitrator and Plaintiffs concerning what, under section 1703(d)(2), are the "essential matters necessary to ensure that every reasonable objective of the statute is met." *See Williams v. Clark County District Attorney*, 50 P.3d 536, 541 (Nev. 2002).  The Arbitrator thought that Defendant could comply with the preeminent objective of the statute by providing the required disclosures in the Property Report--even though they were not in the actual purchase agreements--and by

actually providing written notice of all defaults and twenty days to cure. Plaintiffs, on the other hand, essentially argue that the preeminent objective of the statute can only be complied with if a party complies perfectly with the words of the statute. Because there is no clear binding law on the issue, the Court cannot conclude that Defendant "manifestly disregarded" the applicable law. Mere disagreement between the parties or between the Court and the Arbitrator over the Arbitrator's interpretation of the law do not warrant vacatur.

Because all of Plaintiffs' arguments fail to establish that the Arbitrator exceeded his powers, their Motion will be denied.

## CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Vacate Arbitration Award (ECF No. 1) is **DENIED**.

DATED this 25th day of August, 2011.

_____
Gloria M. Navarro
United States District Judge